# EXHIBIT A



U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*One Pierrepont Plaza*

*Brooklyn, New York 11201*

Mailing Address: 147 Pierrepont Street
*Brooklyn, New York 11201*

April 2, 2007

**By ECF and By Fax**

The Honorable Nina Gershon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:  **United States v. Ronald Washington,
Criminal Docket No. 05-558 (S-1) (NG)**

Dear Judge Gershon:

    The government respectfully submits this letter in support of its motion, pursuant to Rules 608 and 609 of the Federal Rules of Evidence, to cross-examine the defendant concerning certain specific instances of misconduct and certain criminal convictions should he choose to testify in his own defense.

## BACKGROUND

A.   Ronald Washington's Criminal History

    On March 16, 1982, the defendant pleaded guilty in Supreme Court, Queens County, to attempted robbery in the first degree and was sentenced to a term of between 18 months and 54 months imprisonment.

    On July 10, 1984, the defendant pleaded guilty in Supreme Court, Queens County, to grand larceny in the third degree and was sentenced to a term of between 18 months and 36 months imprisonment.

    On November 23, 1987, the defendant pleaded guilty to assault in the first degree in Supreme Court, Queens County, and was sentenced to a term of between 5 years and 10 years imprisonment. This offense arose out of the defendant's February 1987 arrest for the attempted murder of a member of the New York

Police Department.

On or about May 24, 1996, the defendant was arrested in Baltimore, Maryland and was thereafter convicted of theft. He was sentenced to a term of 6 months imprisonment. The defendant used the name Samuel Robertson at the time of his arrest and conviction.

On or about August 20, 1996, the defendant was arrested in Baltimore, Maryland and charged with possession of heroin and cocaine with intent to distribute. The defendant pleaded guilty and was sentenced to a term of 10 years imprisonment. At the time of his arrest, the defendant used the false name "Chris Gibbs" and admitted that he was unemployed. The defendant was released in or about March or May 2002.

B.  The Defendant's Other Criminal Activity

The defendant grew up in Hollis, Queens and, during the late 1970's and early 1980's was associated with the "Hollis Crew," a group from Hollis who engaged in drug trafficking, burglaries and robberies. Thereafter, during the mid 1990's, the defendant became associated with a number of younger gang associates from Hollis who were known as the Hollis Juniors Crew. During the mid-1990's, the Hollis Crew and Hollis Juniors Crew had a number of disputes with another gang known as the "Young Guns." It is believed that the defendant's brother was killed by a person associated with the Young Guns.

During the 1990's, the defendant lived between Baltimore, Maryland and Hollis, Queens when he was not incarcerated. While in Baltimore in or about 1992 or 1993, the defendant shot a family relation known as "Unique" in the back of the head because the defendant believed that Unique was responsible for 250 grams of heroin that was missing. Unique survived the shooting.

On or about November 30, 1995, the defendant and two associates chased and shot Randy Walker as Walker tried to evade the gunfire. During the chase, the defendant, who was sitting in the back seat, fired a gun out the back window, striking and killing Randy Walker. Walker's car flipped over on the residential street during the chase. At the time, the defendant believed that he was firing at Young Guns member Christopher Walker, Randy's brother.

Thereafter, while in Baltimore and prior to being arrested and convicted of narcotics distribution in 1996, the

defendant distributed narcotics and committed various robberies and burglaries, including the robbery of a jewelry store at Reistertown Plaza, and the theft of a firearm, a bullet proof vest, and various articles of jewelry from a Hollis Crew associate known as Yakim.

Upon his release in the spring of 2002, the defendant resumed his criminal activity.

In or about July or August 2002, the defendant traveled to Baltimore and Washington, D.C. to participate in a multi-kilogram narcotics transaction. The defendant participated in negotiations for the transaction but, according to the defendant, the deal was never consummated. The deal was to have involved Yakim, the Hollis Crew member whose home the defendant had previously burglarized. On the way back to New York from Baltimore, the defendant spent approximately $1000 worth of high quality counterfeit $20 bills that he had obtained in Baltimore.

In or about late August 2002, the defendant robbed a man at gunpoint and made his escape by bicycle. When the man attempted to chase the defendant, the defendant turned and fired his gun at the man. At the time of his post-arrest interview, the defendant did not deny that this event occurred, but claimed that he had committed so many robberies and had been intoxicated so often, that it would be impossible to remember.

On October 30, 2002, the defendant and an associate entered a music studio in Hollis, Queens, and the defendant pointed his gun at those present in the studio, ordered them to get on the ground, and provided cover for his associate to shoot and kill Jason Mizell.

C. The Defendant's Affidavit

The defendant prepared a handwritten affidavit, on October 4, 2006, in support of his motion to exclude certain photographic identifications from evidence in this case. In that submission, the defendant argued that officers of the 103 precinct in Queens had targeted him in retaliation for his conduct over the years, including his assault on an officer, and that they unfairly sought him for questioning in connection with the murders of Randy Walker and Jason Mizell.

**ANALYSIS**

I.  The Probative Value of the Defendant's 1996 Convictions Outweighs Any Possible Prejudicial Effect.

At trial, the government seeks to cross-examine the defendant about: 1) his May 1996 conviction for theft and 2) his August 1996 conviction for narcotics distribution.

The government may cross-examine a defendant in regards to a prior conviction where the conviction was punishable by more than one year imprisonment and the court finds that the probative value of admitting the evidence outweighs its prejudicial effect to the accused. Fed. R. Evid. 609(a)(1); United States v. Hourihan, 66 F.3d 458, 464 (2nd Cir. 1995); United States v. Pedroza, 750 F.2d 187, 202-203 (2nd Cir. 1984). Where, however, ten years has elapsed since the date of release from confinement, a conviction is not admissible "unless the court determines, in the interest of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b). The government may also cross-examine a defendant in regards to any prior conviction if it involved dishonesty or false statement. Fed. R. Evid. 609(a)(2).

The defendant's narcotics distribution conviction is a felony and is well within the 10-year time limit. In addition, the defendant used a false name, Chris Gibbs, when arrested for that offense. The defendant's 1996 theft conviction, while outside the 10 year period, is particularly probative of his truthfulness given the nature of the offense and his use of the false name, Samuel Robertson. See United States v. Reed, 572 F.2d 412, 426 (2d Cir. 1977)(felony robbery and assault convictions found probative of credibility and admissible under Rule 609(a)(1)).

Should the defendant testify, his credibility and that of the cooperating witness will likely become the central issue in the case. In weighing a case where the credibility of the defendant is a central issue, it will be essential that the jury possess all the available, relevant information on that point. See United States v. Toney, 27 F.3d 1245, 1253-54 (7th Cir. 1994). The prejudice to the defendant is minimal. During cross-examination of Daynia McDonald, the witness replied in the affirmative to counsel's question whether the defendant had ever told her that he didn't want her to become involved in his "stick," i.e., crimes. In addition, the narcotics offense is

relevant because he was released in the Spring of 2002, proving that the photographs between the defendant and Ms. McDonald must have been taken in the fall of 2002, consistent with Ms. McDonald's testimony (in the photographs, the defendant and Ms. McDonald are wearing winter coats). If the court were to allow the defendant to testify while withholding the truth regarding his own criminal record it would affirmatively mislead the jury into believing that the defendant had no significant criminal record. Any prejudicial effect is clearly outweighed by the probative nature of this information to the jury in evaluating the defendant's credibility should he choose to testify.

II.  The Government Should Be Permitted To Inquire Into Certain Specific Instances of the Defendant's Conduct.

Rule 608 provides that specific instances of the conduct of a witness, for the purpose of attacking the witness' character for truthfulness, may be inquired into during cross-examination if probative of truthfulness or untruthfulness. Fed. R. Evid. 608.

The government intends to cross-examine the defendant concerning the following specific instances of conduct, which are probative of untruthfulness: the defendant's theft in 1995 or 1996 of a firearm, a bullet proof vest, and various articles of jewelry from a Hollis Crew associate known as Yakim while Yakim was away from home and the defendant's possession and use of counterfeit money in July or August 2002.

III. The Government Should Be Permitted to Inquire Into Other Matters That Are Relevant to Issues in the Case.

As Daynia McDonald has testified, the defendant sent her a letter in December 2006 which stated, inter alia, "Strength and Honor." Ms. McDonald understood that letter to be an attempt to influence her not to testify. Ms. McDonald also testified that the letter caused her fear. During their relationship in the fall of 2002, the defendant confided in Ms. McDonald his participation in the following violent crimes: the attempted murder of his cousin, Unique; the murder of Randy Walker; and the murder of Jason Mizell. If the defendant testifies, it is likely he will claim that he did not intend to frighten Ms. McDonald or otherwise influence her.

Moreover, the defendant has already submitted an affidavit in this case in which he claimed that officers unfairly targeted him as a suspect in each of those two murders. Effective cross-examination requires inquiry into these topics,

both to confirm a legitimate basis for Ms. McDonald's fear and to demonstrate that officers had proper basis for their suspicions of the defendant, and preclusion of such an inquiry would mislead the jury.

## **CONCLUSION**

For the reasons stated above, the government respectfully moves <u>in</u> <u>limine</u> to cross-examine the defendant concerning his 1996 theft conviction, his 1996 felony narcotics conviction, his possession and use of counterfeit money, his theft of various items from a former associate's home, and his participation in various acts of violence.

Very truly yours,

ROSLYNN R. MAUSKOPF
United States Attorney

By: _____
Sean Haran
Adam Abensohn
Assistant U.S. Attorneys
(718) 254-6176/6143

cc: Richard Shanley, Esq.
    Clerk of the Court (NG)