# EXHIBIT C

**Susan G. Kellman**
**Attorney at Law**
**25 Eighth Avenue**
**Brooklyn, New York 11217**

Telephone: (718) 783-8200      Facsimile: (718) 783-8226
e-mail: kellmanesq@aol.com

April 2, 2008

**BY FACSIMILE: (718) 613-2567**
**and BY REGULAR MAIL**
Hon. Nina Gershon
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: <u>United States v. Ron Washington</u>
05 Cr. 558 (NG)

Dear Judge Gershon:

Counsel writes to confirm the new sentencing date in the above-reference matter is Wednesday, April 23, 2008, at 2:30 pm. Additionally, on behalf of the defendant, Ron Washington, I write in response to the government's submissions dated October 31, 2007, January 9, 2008 February 13, 2008 and March 25, 2008, and to supplement previous submissions on behalf of Mr. Washington dated October 19, 2007 and December 29, 2007.

## CONSIDERATION OF UNCHARGED MURDERS

In its letter of January 9, 2008, the government urged the Court to consider the murders described in paragraphs 88 & 89[1] of the Pre-Sentence Investigation Report ("PSR") in connection with its §3553 (a) (1) analysis of the "history and characteristics of the defendant" and the "need for the sentence imposed...to

---

[1] Paragraph 88 alleges that on November 30, 1995, the defendant and two others allegedly chased and shot Randy Walker as Walker tried to evade gunfire. The government alleges further that the defendant "allegedly fired a gun out the back window, striking and killing Walker." In paragraph 89, it is alleged that on October 30, 2002, that the defendant entered a music studio in Queens and pointed a gun at the occupants. The government further alleges that while Washington "providing cover," his associate shot "Jason Mizell," aka "Jam Master J."

protect the public from further crimes of the defendant. While counsel recognizes the Court's power to make such a finding, it is respectfully submitted, that the Court should be wary of holding a defendant liable for an uncharged murder – or any uncharged crime for that matter – based upon a preponderance of the evidence standard. In its first letter, the government alleges – without more – that it "possesses proof, above and beyond a preponderance that the [sic] committed murder." However, what follows is nothing of substance and merely a suggestion that the government "reserves the right" to argue for the "top of the applicable statutory maximum."

On March 25, 2008, on the eve of sentencing, the government again asked the Court to consider the allegations of murder enumerated in ¶¶ 88 & 89 of the PSR. The government added little to its earlier factual recitation except to say that during a high speed car chase Mr. Washington shot and killed Randy Walker. Clearly, in state court, where jurisdiction over such a homicide appropriately rests, a bold accusation of this sort would be insufficient for a murder conviction either "beyond a reasonable doubt" or by a preponderance of the evidence. Was Washington really the shooter? Did the decedent have a weapon? Was he, too, shooting? What, if any, provocation was there? Was the shooting, if it occurred, somehow "justified." If the shooting occurred was it self defense? Is any of the gossip that leads the government to make this allegation admissible?

The accusation as to ¶ 88 is more than a decade old and virtually impossible for Mr. Washington to properly address in the context of a Fatico Hearing. Moreover, as the Court will recall, the Mr. Washington's weapon of choice at *each* of the charged robberies was a BB-gun – generally not capable of inflicting a fatal injury. As to the allegation contained in ¶ 89, it is counsel's understanding that this homicide has been the subject of years of federal and state investigations. Notwithstanding, law enforcement has never had anything more than gossip upon which to accuse – but never charge – Mr. Washington. The government's attempt to short circuit courts with proper subject matter jurisdiction and to impose a standard of proof well below that which is constitutionally required in matters as serious as murder offends Mr. Washington's due process rights. Accordingly, it is respectfully submitted that it would be inappropriate for the Court to consider the matter asserted in ¶¶ 88 & 89. Accordingly, the defendant's earlier request that these paragraphs be stricken from the PSR is re-asserted.

## ENHANCEMENT FOR OBSTRUCTION OF JUSTICE IS NOT AUTHORIZED

The government's request for a two-level enhancement for obstruction of justice pursuant to Guideline § 3C1.1 is not authorized under this or any guideline. Guideline § 3C1.1 provides as follows:

> If (A) the defendant willfully obstructed or impeded...the administration of justice during the ***course of the investigation, prosecution or sentencing of the instant offense of conviction***...***and*** (B) the obstructive conduct ***related to (i) the defendant's offense of conviction*** and any relevant conduct; or (ii) ***a closely related offense***, increase the offense level by 2 levels. Emphasis added.

The guideline upon which the government relies requires that the "obstruction" have a connection and/or relationship with the investigation of the defendant's "offense of conviction" or other matter "closely related". Here the government asks the Court to impose a two-point enhancement based upon Mr. Washington's submission of an affidavit which the government alleges is false: (1) in a totally unrelated matter; (2) by an individual not otherwise known to Mr. Washington; and (3) in a matter which is not connected in any way to the conduct charged in Mr. Washington's "offense of conviction;" nor is it "closely related" to any of Mr. Washington's charges. Even the government will concede that United States v. Rodney Reid has no connection whatsoever to Mr. Washington or any of his crimes of conviction. The guidelines do not support such an enhancement. Accordingly, it is respectfully requested that the Court reject this requested enhancement by the government.

## CRIMINAL HISTORY CALCULATION

In earlier submissions to the Court, Mr. Washington asserted that the criminal history calculation set forth in paragraphs 84-87 were incorrect. Mr. Washington persists in these assertions and reminds the Court specifically as to ¶ 85, that according to paragraphs ¶¶ 73 & 76, Mr. Washington was released from prison on March 14, 2002, and there does not appear to be any indication that he was placed on parole. Mr. Washington informs that he served the maximum sentence allowable under the law and accordingly, no term of parole followed. Mr. Washington further reports that he was never notified that he was on parole, nor that he was to report to a parole officer. Accordingly, he never reported and there have been legal repercussions – a fact, it is submitted – which

supports the notion that he was never placed on parole. Counsel notes that Mr. Washington's position was made known to the Court and the Probation Department in counsel's letter of October 19, 2007. Additionally, in counsel's letter of December 29, 2007, counsel challenged Probation to produce documentation supporting its claim regarding the imposition of a term of parole. Their failure to do so, it is submitted, confirms the correctness of Mr. Washington's position. Accordingly, Mr. Washington's criminal history calculation should be re-done.

## OTHER CONSIDERATIONS PURSUANT TO 18 USC 3553 (a)

In its submission to the Court, the government asks the Court to impose a more onerous sentence upon Mr. Washington in order to protect the public from further harm. It is respectfully submitted that the guidelines, when correctly calculated, provide more than adequate protection for the public and that a sentence within the corrected guidelines, as outlined by counsel in our letters of October 19, 2007 and December 29, 2007, provides sufficient punishment for the crimes of conviction.

Respectfully submitted,

*Susan G. Kellman*

Susan G. Kellman

cc: AUSA Sean Haran

USPO Holly Kaplan

Ron Washington