UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

UNITED STATES OF AMERICA,

                                                                                                                                    20 Cr. 305 (LDH)

                         -against-

KARL JORDAN, JR., et al.,

                                                                           Defendants.

------------------------------------------------------------------------ x


**REPLY MEMORANDUM OF LAW IN
SUPPORT OF DEFENDANT
KARL JORDAN, JR.'S
PRETRIAL MOTIONS**


                                                                    MICHAEL HUESTON
                                                                    MARK DEMARCO
                                                                    JOHN DIAZ
                                                                    MONICA NEJATHAIM
                                                                    *Counsel for Defendant Karl Jordan, Jr.*

Dated:  July 15, 2022

## TABLE OF CONTENTS

**<u>Page</u>**

Table of Authorities ................................................................................................................. ii

Preliminary Statement ............................................................................................................. 1

Argument ................................................................................................................................ 1

I.      Mr. Jordan's Waiver Was Involuntary .................................................................... 1

Conclusion .............................................................................................................................. 6

## TABLE OF AUTHORITIES

**CASES**                                                                                                                  **Page**

*Colorado v. Spring*,
    479 U.S. 564 (1987) ...............................................................................................1, 2

*Culombe v. Connecticut*,
    367 U.S. 568 (1961) ...............................................................................................3, 4, 5

*Moran v. Burbine*,
    475 U.S. 412 (1986) ...................................................................................................2

*Rogers v. Richmond*,
    365 U.S. 534 (1961)....................................................................................................4

*United States v. Mitchell*,
    966 F.2d 92 (2d Cir. 1992) .........................................................................................2

*United States v. Okwumabua*,
    828 F.2d 950 (2d Cir. 1987) .......................................................................................4

*United States v. Orr*,
    819 F. App'x 756 (11th Cir. 2020) .............................................................................3

*United States v. Plugh,*
    648 F.3d 118 (2d Cir. 2011),
    cert. denied, — U.S. —, 132 S.Ct. 1610 (2012) .......................................................6

*United States v. Prudden*,
    424 F.2d 1021 (5th Cir. 1970) ....................................................................................3

*United States v. Syslo*,
    303 F.3d 860 (8th Cir. 2002) ..................................................................................2, 3

**STATUTES**

U.S. Const. amend. IV ........................................................................................................2

**PRELIMINARY STATEMENT**

The government defends the agents' conduct in obtaining Mr. Jordan's post-arrest statement by arguing that they did not engage in "affirmative deceit".[1]

However, the video evidence shows the opposite. Mr. Jordan repeatedly asked the agents to tell him the charges, but they dissembled, "So, obviously we brought you here because you've been selling drugs. Does that sound correct to you?"[2] The government frames the agents' conduct as a minor act of omission that happened during an investigation. This ignores that Mr. Jordan was not an unindicted person or a mere suspect, but an indicted defendant who requested an honest answer. The agents forsook their obligations to do so and instead provided him with just enough of the truth to give a false impression that they had answered his question.

**ARGUMENT**

**I.     Mr. Jordan's Waiver Was Involuntary**

The government principally cites *Colorado v. Spring*, 479 U.S. 564 (1987) for the proposition that Mr. Jordan's waiver was voluntary. *Spring* is easily distinguishable. That defendant had not been indicted for homicide at the time he was questioned. *Colorado v. Spring*, 479 U.S. at 566 ("After federal agents had arrested the defendant in Missouri for selling stolen weapons, given him his Miranda warnings, and obtained a written waiver of his rights to remain silent and to obtain counsel, they proceeded to question him about a Colorado murder as well as the weapons charges, although they had not previously informed him that they would do so."). One need only look as far as the Sixth Amendment to see that Mr. Jordan was in an entirely different posture as a person indicted for murder at the time agents questioned him. *See* U.S.

---

[1] Gov't Opposition at pp. 4, 17, 20.

[2] *Id.* at p. 4.

Const. amend. VI ("the accused shall enjoy the right … to be informed of the nature and cause of the accusation[.]").

The government relies on the rationale in *Spring* that "a valid waiver does not require that an individual be informed of all information useful in making his decision or all information that might…affec[t] his decision to confess." *Spring*, 479 U.S. at 576-77 (quoting *Moran v. Burbine*, 475 U.S. 412, 422 (1986)). But the analysis fails. The Mizell homicide was not just "information". It was the central point of the agents' orchestrated interrogation. And *Burbine* shows that *Spring* is inapplicable because, there, the "information" was not central to guilt or innocence, but simply the fact that defense counsel had been retained. *Burbine*, 475 U.S at 415 ("The defendant, who was not informed that counsel had been retained and was trying to reach him, was in fact questioned about the murder that night by police from the other city, after he had been read his Miranda rights and had executed a written waiver, and he signed three statements admitting to the murder.").

The government's reliance on *United States v. Okwumabua*, 828 F.2d 950 (2d Cir. 1987) similarly fails because it concerned the defendants not being informed about "possible pending criminal charges." *Id.* ("The court held that there was no legal or moral duty to inform appellee official that appellant's agent was conducting a criminal investigation."). It is the same with *United States v. Mitchell*, 966 F.2d 92, 94-95 (2d Cir. 1992), which involved an "investigation" of an unindicted suspect. *Id.* ("In the course of the conversations between Tuttle and Mitchell, both at Mitchell's home and at the water facility, Mitchell made certain inculpatory statements indicating that the turbidity reports were not conducted daily, as required and reported.").

It is the same with the defendant in *Syslo*. *See United States v. Syslo*, 303 F.3d 860, 861 (8th Cir. 2002) ("After the husband, a former bank guard, became a likely suspect, police asked

2

him to come in to provide a writing sample for an unrelated case. The police induced him to sign a waiver of his Miranda rights based on the unrelated case, and then made inquiries of him about the burglary. At the same time they searched his residence and brought defendant wife in for questioning with their children. The police then arguably induced both to confess by telling them the other was confessing."). It is the same with *Prudden*. *See United States v. Prudden*, 424 F.2d 1021, 1022 (5th Cir. 1970) ("The court found that the mere failure of the IRS agent to warn defendant that the investigation might result in criminal charges, absent any acts by the agent which materially misrepresented the nature of the inquiry, did not constitute fraud, deceit, and trickery."). And it is the same with *United States v. Orr*, 819 F. App'x 756, 759 (11th Cir. 2020) ("Unbeknownst to Mr. Orr, the advertisement had been posted by an undercover law enforcement officer…[.]"). The government's principal cases do not analyze, much less support the proposition that a waiver is valid when agents affirmatively lie to an indicted defendant about his charges after he has exercised his right to be informed of his charged crimes.

Finally, the government's reliance on *Culombe v. Connecticut*, 367 U.S. 568 (1961) is unavailing, where it asserts: "The totality of the circumstances shows that, despite the agent's silence about the murder charges, the defendant's waiver and statements were voluntary and 'the product of [his] essentially free and unconstrained choice.'" *Id*.[3]

The quote comes from this paragraph in the decision:

> Each of these factors, in company with all of the surrounding circumstances—the duration and conditions of detention (if the confessor has been detained), the manifest attitude of the police toward him, his physical and mental state, the diverse pressures which sap or sustain his powers of resistance and self-control—is relevant. The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an

---

[3] *See* Gov't Opposition at p. 18.

> essentially free and unconstrained choice by its maker? If it is, if
> he has willed to confess, it may be used against him. If it is not, if
> his will has been overborne and his capacity for self-determination
> critically impaired, the use of his confession offends due process.
> *Rogers v. Richmond*, 365 U.S. 534 [(1961)]. The line of
> distinction is that at which governing self-direction is lost and
> compulsion, of whatever nature or however infused, propels or
> helps to propel the confession.

*Culombe,* at 603. The totality of the circumstances shows that Mr. Jordan's waiver was not voluntary because the agents repeatedly misrepresented the nature of Mr. Jordan's charges by affirmatively withholding that he had already been indicted for the Mizell homicide. The timeline in the interrogation video substantiates this.

- At 10:09:40, the agents gave Mr. Jordan Miranda warnings.[4]

- At 10:10:42, Mr. Jordan asks to be told his charges.

- At 10:13:20, Mr. Jordan again asks to be told his charges.

- At 10:13:42, Mr. Jordan again asks to be told his charges.

- At 10:15:15, the agents tell Mr. Jordan they are going to be "honest".

- At 13:18:00, the agents finally bring up Mr. Mizell's homicide, asking Mr. Jordan what does he know about Mr. Mizell's homicide and where was he at the time of the murder, to which Mr. Jordan replies he first heard about it on the news.

- At 13:20:11, the agents again ask Mr. Jordan where was he at the time of Mr. Mizell's homicide and Mr. Jordan responds that the was at his former girlfriend's house in Queens Village.

- At 16:00:16, the agents tell Mr. Jordan that agents are meeting with Ronald Washington and that Washington has implicated him in Mr. Mizell's murder, and Mr. Jordan again denies his involvement and repeats his alibi.

- At 16:01:43, the agents tell Mr. Jordan that he is going to be charged with Mr. Mizell's murder and Mr. Jordan says he wants a lawyer and continues to deny his involvement, stating its "100% fact it's not true", and the substantive interrogation ends at 16:12:32.

---

[4] The time references are in military time as stamped in the video of Mr. Jordan's interrogation.

As demonstrated by how quickly the interview ended once Mr. Jordan learned his actual charges, the only fair inference to be drawn is that he would not have spoken with the agents in the first instance had he been told the truth. As the Supreme Court stated in *Culombe*:

> The inquiry whether, in a particular case, a confession was voluntarily or involuntarily made involves, at the least, a three-phased process. First, there is the business of finding the crude historical facts, the external, 'phenomenological' occurrences and events surrounding the confession. Second, because the concept of 'voluntariness' is one which concerns a mental state, there is the imaginative recreation, largely inferential, of internal, 'psychological' fact. Third, there is the application to this psychological fact of standards for judgment informed by the larger legal conceptions ordinarily characterized as rules of law but which, also, comprehend both induction from, and anticipation of, factual circumstances.

*Id.* Here, the "crude historical facts" are clear. Mr. Jordan was an indicted defendant the agents misled when he exercised his right to be told his indicted charges. The "imaginative recreation" is also clear. The agents created a falsehood to induce Mr. Jordan to speak with them. And "the application to this psychological fact of standards for judgment" is also clear. Mr. Jordan's act ending his interrogation within minutes once he learned the truth proves the agents' "affirmative deceit" purloin an involuntary waiver.

"[K]nowing" means with full awareness of the nature of the right being abandoned and the consequences of abandoning it, and "voluntary" means by deliberate choice free from intimidation, coercion, or deception. *United States v. Plugh,* 648 F.3d 118, 127 (2d Cir. 2011), *cert. denied,* ⸺ U.S. ⸺, 132 S.Ct. 1610 (2012).  The agents purposely denied Mr. Jordan this right.

## CONCLUSION

Mr. Jordan's motions should be granted.

Dated:      Brooklyn, New York
            July 15, 2022

                              Respectfully submitted,

                              ____/s/_____
                              MICHAEL HUESTON, ESQ.
                              MARK DEMARCO, ESQ.
                              JOHN DIAZ, ESQ.
                              MONICA NEJATHAIM, ESQ.